Vitaya Isaraphanich, New York City, pro se.

Robert Abrams, Atty. Gen., State of N.Y. by Anne Ehrenkranz, Asst. Atty. Gen., New York City, for defendants Coughlin, Wilson and Reid.

**Vitaya ISARAPHANICH, Plaintiff,**

v.

**Thomas COUGHLIN, III, et al., Defendants.**

**No. 85 Civ. 4306 (MGC).**

United States District Court, S.D. New York.

July 28, 1989.

OPINION AND ORDER

CEDARBAUM, District Judge.

*Pro se* plaintiff, Vitaya Isaraphanich, filed this civil rights action pursuant to 42 U.S.C. § 1983 in October of 1986 against Thomas Coughlin, Commissioner of New York State Department of Correctional Services, Theodore Reid, Superintendent of Fishkill Correctional Facility, Clark Wilson, Director of the Temporary Release Program, and ten other employees of the New York State Department of Correctional Services.[1] Plaintiff alleged five violations of his civil rights resulting from his transfer from Auburn Correctional Facility to Fishkill Correctional Facility. First, plaintiff alleged that he was given "bad quality" toothpaste, resulting in the loss of three teeth. Second, he claimed that since he had been permitted to participate in the Family Reunion Program at Auburn, defendant Reid's denial of his application to participate in the Family Reunion Program at Fishkill deprived him of a liberty interest without due process of law. Third, he claimed that Reid's reason for denying him participation in the Family Reunion Program—that plaintiff had an outstanding detainer filed against him by the Immigration and Naturalization Service (INS)—violated the equal protection clause of the Fourteenth Amendment. Fourth, plaintiff

---

1. Those other employees were never served with the complaint and have not appeared in this action, either personally or through counsel.

claimed that defendant Wilson's denial of his application to participate in the Temporary Release Program on the basis of the INS detainer violated the equal protection clause. Fifth, he alleged that his prison assignments at Fishkill forced him to discontinue his education at Dutchess Community College.

In 1987, Coughlin, Reid and Wilson moved to dismiss the action. On March 24, 1988, I accepted Magistrate Gershon's recommendation to dismiss the complaint as to Coughlin for lack of personal involvement in the deprivation of plaintiff's constitutional rights. I also dismissed plaintiff's due process claim against Reid for failure to state a claim, but denied the motion to dismiss plaintiff's equal protection claims. Defendants Reid and Wilson have now moved for summary judgment on those claims.

For the reasons discussed below, the defendants' motion is granted.

## BACKGROUND

The facts are not in dispute, making summary judgment appropriate in this case. Fed.R.Civ.P. 56. Plaintiff was incarcerated at Auburn, a maximum security prison, from February of 1983 until March of 1984, when he was transferred to Fishkill, a medium security prison. Plaintiff participated twice in the Family Reunion Program ("FRP") at Auburn. This program allowed plaintiff to live privately for approximately 48 hours with his wife and three children in a mobile home situated in a courtyard at Auburn. Ehrenkranz Affidavit at ¶ 3, Powers Affidavit at ¶ 3. In May of 1984, plaintiff applied to participate in the FRP at Fishkill. Reid thereafter informed plaintiff that his application had been denied at Fishkill and at the New York Department of Correctional Service's central office because of an outstanding detainer filed against him by the INS. Defendant's Notice of Motion, Exh. C–2. Plaintiff appealed this decision, but Reid reaffirmed the denial in July of 1984 on the same ground. *Id.*, Exh. E–1.

The INS detainer, first filed in June of 1983, specifically notified Auburn that the INS was investigating plaintiff to determine whether he should be deported to his native country of Thailand after the completion of his sentence. The INS requested notice from the prison before plaintiff was transferred or released. Complaint, Exh. B. In September of 1984, the INS sent a detainer to Fishkill, notifying the facility that an Order to Show Cause in deportation proceedings had previously been filed against plaintiff, and again requesting notice to the INS prior to plaintiff's release. Defendant's Notice of Motion, Exh. I–1.

In June of 1984, plaintiff applied for participation in the Temporary Release Program ("TRP") at Fishkill. The TRP includes a variety of individual programs which allow an inmate to leave his facility unescorted by security personnel. Wilson Affidavit at ¶ 1. Plaintiff's application for participation in the TRP was denied because of the outstanding INS detainer. In October of 1984, defendant Wilson reaffirmed the denial on the ground that the INS had "filed a warrant" against plaintiff. Defendant's Notice of Motion, Exh. I–2.

## DISCUSSION

The equal protection clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." It is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The essence of plaintiff's claim is that the filing of an INS detainer against an inmate is a constitutionally impermissible ground on which to deny him participation in the FRP and the TRP, because it unjustifiably treats deportable aliens differently from other similarly situated inmates in determining their eligibility for these programs.

Certain equal protection rights survive incarceration, and may require courts to apply a strict level of scrutiny to a challenged regulation. *See Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (Alabama statute requiring segregation of races in prisons and jails violation of

Fourteenth Amendment). But as a general matter, when "confronted with claims based on the Equal Protection Clause, the courts should allow the prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 136, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977). Thus, "prison administrators, when making classifications need only demonstrate a rational basis for their distinctions," *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir.1984) (citation omitted), or that they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see also Rosenberg v. Meese*, 622 F.Supp. 1451, 1468 (S.D.N.Y.1985) (noting disinclination of federal courts to interfere with a classification decision by prison officials).

Denying inmates participation in the FRP and TRP on the basis of an outstanding INS detainer is rationally related to the legitimate penological interest of preventing participating inmates from escaping upon release. As Wilson states in his affidavit:

> The risk of absconding is ... high when an inmate is faced with the possibility of deportation. The threat of being deported is a real one: some inmates in fact have rejected offers of parole, preferring to remain in custody rather than face deportation to their native country.... The inmate, afraid that the INS might deport him, therefore has incentive to abscond when out of the facility ... in anticipation of INS action.

Wilson Affidavit at ¶ 6. Because the TRP allows inmates to leave the facility unescorted, the risk that inmates participating in this program will attempt to escape is substantial. The increased likelihood that inmates subject to deportation will attempt to escape provides a rational basis for considering them as ineligible to participate in the program. *See* N.Y. Dept. of Correct. Services, Temporary Release Program, Rules and Regulations at p. 4, App. A. With respect to the FRP, the additional incentive to escape created by an outstanding INS detainer justifies assigning a deportable alien a "higher security designation" than other inmates, thereby precluding him from participating in the program. *See* N.Y. Dept. of Correct. Services Directive, Family Reunion Program at p. 1.

In addition, the FRP site at Fishkill poses greater security concerns than the site at Auburn. The Auburn FRP site is located in a courtyard within the facility, surrounded by the "thick, heavily guarded walls of the facility itself." Powers Affidavit at ¶ 3. The FRP site at Fishkill is located on "the edge of a field" with only a fence of razor wire separating the site from the outside world. *Id.* at ¶ 4. Because the FRP site at Fishkill is less secure, the Fishkill officials have a heightened interest in insuring that participants in the FRP do not have a special incentive to escape.

### CONCLUSION

For the reasons discussed above, defendants' preclusion of plaintiff from participation in the FRP and the TRP at Fishkill because of the INS deportation detainer outstanding against him did not deprive him of his constitutional right to the equal protection of the laws. Accordingly, defendants' motion for summary judgment is granted.

SO ORDERED.