Robert FRANKLIN, et al., Plaintiffs,

v.

Marion BARRY, et al., Defendants.

Civ. A. No. 94–00511 (JHG).

United States District Court,
D. Columbia.

Dec. 13, 1995.

**24**

Jonathan Mark Smith, Aurie Talbor Hall, DC Prisoners' Legal Services Project, Inc., Washington, DC, Richard Edward Wallace, Jr., Callie Georgeann Pappas, Howrey & Simon, Washington, DC, for Robert Franklin, Francisco Delima, Julian Abreu, Cesar Acuna, Oscar Samayoa, Pena Hernan, Rafael Moreira, Felipe Gomez, Roberto Umanzor.

Maria Claudia Amato, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Sharon Pratt Kelly, Walter B. Ridley, Bernard L. Braxton, Robert H. Reeder, Margaret A. Moore, John Henderson and District of Columbia.

Aurie Talbor Hall, DC Prisoners' Legal Services Project, Inc., Washington, DC, Richard Edward Wallace, Jr., Callie Georgeann Pappas, Howrey & Simon, Washington, DC, for Victor Maldonado, Mario Vilche, Jose Bonilla, Eulalia Amparo.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending are the parties' cross-motions for partial summary judgment and the plaintiffs' motion for class certification.

The plaintiffs' motion for partial summary judgment makes a serious allegation of discrimination on the basis of alienage. At the outset of this opinion, the Court notes that this is a charge that the Court has evaluated carefully to determine if a basis for the allegation exists. While prisoners in federal prisoners have forfeited their liberty, they have not forfeited their constitutional protections. Prison policies that discriminate on the basis of alienage are subject to heightened judicial scrutiny.

However, the claim here that the defendants have discriminated against alien prisoner plaintiffs, who are subject to detainers issued by the Immigration and Naturalization Service ("INS"), by denying those alien prisoners transfers to minimum security facilities, is not a matter of discrimination on the basis of alienage. While the fact of alienage is necessary to bring the individual within the sphere of the INS's authority, the INS issues a detainer for alienage-neutral reasons: because, for example, the alien is subject to deportation for a violation or violations of criminal law. Similarly, as explained in detail below, the challenged policy is alienage-neutral: *all* prisoners with *any type* of a detainer are barred from assignment to minimum security facilities. The defendants have made this judgment because of the risk of flight that arises when prisoners with detainers are faced with pending criminal trials

or deportation hearings. In sum, although the defendants' policy turns upon the existence of a detainer, whether from the INS, another federal agency or some other jurisdiction, it is not based upon alienage.

As discussed in detail below, the plaintiffs' Equal Protection Clause challenge will be rejected; there is no evidence that the alien prisoner plaintiffs with detainers have been treated differently than non-alien prisoners with detainers. The plaintiffs' Due Process Clause challenge will also be rejected, because the defendants' detainer policy does not infringe upon a liberty interest that is entitled to constitutional protection.

Accordingly, the plaintiffs' motion for partial summary judgment will be denied, the defendants' motion for partial summary judgment will be granted, and the plaintiffs' motion for class certification will be granted in part and denied in part.

## I. Background.

Plaintiffs, Hispanic prisoners incarcerated in District of Columbia correctional institutions, seek equitable relief, a declaratory judgment and damages arising from alleged violations of the First, Fifth and Eighth Amendments to the Constitution, 42 U.S.C. § 1983, 42 U.S.C. §§ 2000d, 2000bb, and under D.C. law pendent to the constitutional violations. The plaintiffs' claims fall into two general categories: first, relevant to the issue of class certification currently before the Court, they allege that the lack of Spanish-speaking staff and translators violates their constitutional rights because it effectively denies them adequate medical care, interferes with their right to privacy, undermines their right to a fair hearing at parole board hearings, and denies them access to vocational, educational and drug treatment programs as well as religious services. Additionally, the plaintiffs claim that the defendants have failed to protect Hispanic prisoners from a racially hostile environment.[1] Second, relevant to the motion for certification of a subclass and the cross-motions for partial summary judgment, the plaintiffs aver that the Department of Corrections' policy barring prisoners from being transferred to minimum security if they have detainers issued against them by the INS violates their rights to due process and equal protection under the Fifth Amendment to the Constitution.

■ The facts underlying the cross-motions for summary judgment are neither complex nor in dispute. As a matter of policy, the defendants prohibit inmates with detainers from being assigned to minimum security facilities. A detainer imposed by another jurisdiction puts Department of Corrections officials on notice that an inmate is wanted for trial or a hearing by the jurisdiction that issued the detainer. *See United States v. Mauro,* 436 U.S. 340, 358, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978).[2]

Prisoners at Lorton who are within 24 months of their parole date are generally eligible for assignment to a minimum security facility—a discretionary assignment decision that depends upon the facts of the individual inmate's case. *See* Plaintiffs' Motion for Summary Judgment, App. 2, at 30–33 (deposition of Mr. Edmund P. Walsh, Administrator of Case Unit Management Services for the Department of Corrections) (deposition of Nov. 2, 1994). The issuance of a detainer, however, serves as a complete bar to being assigned to a minimum security facility,[3] because the defendants have concluded that an inmate faced with legal action in another jurisdiction poses a risk of flight. *See id.* at App. 2, at 10–11 (deposition of Dec. 12, 1994) *id.* at App. 2, at 44–45 (deposition of Nov. 2, 1994).

While detainers may be imposed for a variety of reasons, the detainers challenged

---

1. Because the allegations related to the first category of claims is relevant only to the class certification issue, except for the facts relevant to class certification, the facts alleged to support these claims are not discussed herein.

2. Federal agencies as well as state prosecutors and law enforcement officials may issue detainers. *See Mauro,* 436 U.S. at 354, 98 S.Ct. at 1844 (Federal government is party to the Agree-

ment); *see, e.g., Baxter v. United States,* 966 F.2d 387, 389 (8th Cir.1992).

3. There is a suggestion in the record that the Administrator of the Department of Corrections has the authority to make exceptions. *See* Plaintiffs' Motion for Summary Judgment, at App. 2, at 72 (deposition of Mr. Walsh of Nov. 2, 1994).

by the plaintiffs are those issued by the INS. Under 8 C.F.R. § 242.2(a) (1994), the INS may issue a detainer when it has reason to believe that an alien prisoner is subject to exclusion or deportation. The defendants treat INS detainers like any other detainer, thus automatically excluding a prisoner with an INS detainer from assignment to minimum security while the detainer remains in force just as they would exclude a prisoner with a felony detainer.

The plaintiffs here are not challenging INS's decision to issue the detainers in the first instance, even though the decision would not have been made but for the plaintiffs' alienage. Nor are they claiming that the Department of Corrections has denied them their rights to contest the basis for the detainers under the Interstate Agreement on Detainers Act ("Agreement"), Pub.L. No. 91–358, 84 Stat. 1397–1403 (Dec. 9, 1970), codified at 18 U.S.C. app. § 2 (1994).[4] Instead, the Hispanic prisoner plaintiffs challenge the reasoning underlying the defendants' policy, contending that the policy denies them equal protection and due process of law in violation of the Fifth Amendment to the Constitution.

## II. Discussion.

**The cross-motions for partial summary judgment.**

■ Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because there is no genuine issue as to any material fact underlying the plaintiffs' claim of constitutional violations arising from the defendants' policy on detainers, summary judgment is appropriate.

■ While prisoners forfeit their liberty upon being convicted of violating a criminal law, they do not forfeit their constitutional protections. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Federal courts have an obligation to scrutinize prisoners' allegations of constitutional violations to ensure equal treatment and to protect any remaining liberty interests from being taken without due process of law. *Procunier v. Martinez,* 416 U.S. 396, 405–406, 94 S.Ct. 1800, 1807–08, 40 L.Ed.2d 224 (1974). Nevertheless, the Supreme Court has admonished the federal courts not to intrude in prison matters that do not rise to the level of constitutional violations or otherwise invoke federal jurisdiction. *Turner,* 482 U.S. at 84–85, 107 S.Ct. at 2259; *see also Sandin v. Conner,* — U.S. —, —, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (1995). In recognition of the deference due prison officials in areas committed to their discretion, the Supreme Court has adopted a lower standard of scrutiny in evaluating the constitutionality of prison rules and regulations. *Id.* at 81, 89–91, 107 S.Ct. at 2257, 2262. The claims of the plaintiff prisoners will be so evaluated.

---

4. By enacting the Agreement in Title 18, which is applicable to the District of Columbia, Congress intended to encourage cooperation among member states and agencies, and to provide a procedure in which a prisoner could "demand a speedy disposition of the charges giving rise to the detainer." *Mauro,* 436 U.S. at 351, 98 S.Ct. at 1842. Under Article III of the Agreement,

prison officials holding a prisoner must notify him or her of the source and nature of any detainer, and the prisoner may then request that he or she be brought to trial within 180 days. Article IV allows an agency or official filing a detainer against a prisoner to secure that prisoner's presence for trial.

*The Equal Protection Clause challenge*

 To prevail on an equal protection clause challenge, the plaintiffs must first show that they have been or are being treated differently from persons who are similarly situated. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Women Prisoners v. District of Columbia*, 877 F.Supp. 634, 679 (D.D.C.1994). This the plaintiffs have not done. Contrary to an unsupported statement in the plaintiffs' motion, *see* Plaintiffs' Motion for Summary Judgment, at 8 ("summarily classifying Hispanic inmates with INS detainers"), there is no evidence that the plaintiffs, Hispanic prisoners against whom INS detainers have been imposed, are being denied minimum security transfers while non-Hispanic prisoners against whom INS detainers have been imposed are allowed minimum security transfers. Nor is there any evidence that prisoners against whom INS detainers have been imposed are being denied minimum security transfers while prisoners with non-INS detainers are not. *All* prisoners with *any type of detainer* are denied minimum security transfers. The plaintiffs' actual complaint appears not to be that they are being treated differently, but that they are being treated similarly. Under the defendants' policy, the issuance of a detainer, for whatever purpose and by whichever jurisdiction, results in denying a prisoner eligibility for minimum security unless and until the detainer is removed.

The plaintiffs imply that the nature of their INS detainers makes them differently situated than prisoners with non-INS detainers, thus justifying constitutional scrutiny and more favorable treatment. Although the plaintiffs' argument is not entirely clear, apparently because INS detainer decisions are only issued against aliens, they argue that the defendants' policy regarding INS detainers should be strictly scrutinized for discriminatory animus and that the policy fails to satisfy the standards of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

 However, it is clear that the plaintiffs here are not challenging the deci-

sions by the INS to issue detainers against aliens who are subject to deportation. While it is true that the INS only issues detainers for aliens, its decision to issue a detainer, like a deportation order itself, arises from the allegation that the individual alien has engaged in conduct that makes him or her subject to deportation. *See, e.g., Cruz v. Molerio*, 840 F.Supp. 303, 305 (S.D.N.Y.1994) (detainer issued under 8 C.F.R. § 242.1 relative to deportation proceeding arising from conviction on a controlled substance charge). The fact of alienage is necessary to draw the individual within INS's sphere of decision-making, but the decision to issue a detainer does not otherwise involve alienage. Similarly, the defendants' policy is alienage-neutral: INS detainers, imposed because the alien prisoner has engaged in criminal conduct making him or her subject to deportation, are treated just like detainers imposed by other jurisdictions that similarly allege violations of criminal law. *See Coca v. Henry*, No. 92–C–4243, 1991 WL 164328 at *2 (N.D.Ill., Aug. 21, 1991) (rejecting an equal protection clause attack on prison's policy barring assignment to halfway house for prisoners against whom INS detainers are issued; court held that there was no evidence that the prisoner plaintiff suffered intentional discrimination because of membership in a protected class).

 The bottom line is that the alien prisoners are not being treated differently because of their alienage; they are being treated the same as other prisoners against whom detainers are issued to ensure their presence at a trial or a hearing. While discrimination arising from a person's alienage is clearly entitled to constitutional protection, alienage does not guarantee preferential treatment for prisoners subject to deportation for criminal violations.

 Because alienage is not the basis for the defendants' decision, heightened constitutional scrutiny under *Turner* is not applicable. However, even if the standards of *Turner* applied, the defendants' policy would survive, because it is valid and rationally related to a legitimate, penological interest.[5]

---

5. The plaintiffs argue that the defendants' policy

is irrational and arbitrary, because the INS does

The defendants justify their detainer policy on the ground that persons against whom detainers are issued pose a greater risk of flight because of the pendency of additional criminal or administrative hearings. Not only does this conclusion appear reasonable on its face, but it has been upheld against similar constitutional attacks. *E.g., Isaraphanich v. Coughlin,* 716 F.Supp. 119, 120–21 (S.D.N.Y.1989). Additionally, like all prisoners against whom detainers are issued, the plaintiffs have an alternative means to challenge the INS detainers. *See* Agreement, *supra,* at Art. III; *see also Cuyler v. Adams,* 449 U.S. 433, 444–48, 101 S.Ct. 703, 709–12, 66 L.Ed.2d 641 (1981) (Agreement gives prisoners the right to challenge detainer). The underlying basis for the detainers could be adjudicated and, if justified, the detainers could be removed. The existence of this alternative mechanism to void detainers provides evidence of the reasonableness of the regulation under *Turner. See* 482 U.S. at 90, 107 S.Ct. at 2262.

■ While it is possible that the defendants could, as the plaintiffs argue, adopt a policy that involves a case-by-case adjudication as an alternative to the current policy, the defendants are not constitutionally required to do so. *Cf. id.* at 90–91, 107 S.Ct. at 2262. Accepting the plaintiffs' argument would thrust this Court precisely into the judicial micromanagement of discretionary decisionmaking by prison officers that the Supreme Court has directed the courts to avoid. *See id.* at 90, 107 S.Ct. at 2262; *see also Sandin,* —— U.S. at ——, 115 S.Ct. at 2299; *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 136, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977); *Baraldini v. Thornburgh,* 884 F.2d 615, 618 (D.C.Cir.1989). Moreover, imposing such a policy choice by judicial decree would undoubtedly affect the allocation of prison resources, an area in which the courts tread lightly. *See Turner,* 482 U.S. at 90, 107 S.Ct. at 2262. While federal courts are not, and should not be, reluctant to issue orders that affect the allocation of prison resources in certain cases, a court order is not necessary here to create a new or different procedural mechanism to cure the ill of which plaintiffs complain, particularly when such a mechanism already exists. In sum, the plaintiffs' dispute with the defendants is one of policy.

## The Due Process Clause challenge

■ The plaintiffs also aver that the defendants' policy on INS detainers violates their right to due process of law. The Due Process Clause of the Fifth Amendment to the Constitution protects against government action that deprives a person of liberty or property without due process of law. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). Not all actions or decisions by government officials trigger the protections of the Due Process Clause, but only those deprivations in which a person has a legitimate claim of entitlement to the liberty or property at issue. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972).

■ To establish a due process violation, the plaintiff must first identify a protected liberty interest, which may arise from the Constitution or under state law. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Price v. Barry,* 53 F.3d 369, 370 (D.C.Cir.1995). Determining whether state law or regulations create an expectancy of release, and therefore, a protected liberty interest, turns simply upon the nature of the language in the statute or regulations. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).[6] Mandatory

---

not require such restraints and because the defendants have failed to provide statistical proof of their theory that the inmates against whom INS detainers are issued pose a heightened escape risk. *See, e.g.,* Plaintiffs' Reply, at 2. However, the constitutionality of a policy is not a matter of either statistical proof or agency consensus. The plaintiffs' argument with the defendants is more about policy preferences than about law.

6. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court limited *Hewitt*'s reach, in large measure because of its tendency to "involve[] federal courts in the day-to-day management of the prisons, often squandering judicial resources with little off-setting benefit to anyone." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2299. After *Sandin,* at least as applied to disciplinary measures, federal

language can create a liberty interest if it establishes a "particularized standard" that binds a decision maker and, thereby, creates a legitimate expectation of release. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). However, "[i]f the decision maker is not required to base its decision on objective and defined criteria, but instead can deny the requested relief for any constitutionally permissible reason or for no reason at all, the state has not created a constitutionally protected liberty interest." *Id.* (quoting *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 466–67, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981)).

 The decision to transfer a prisoner to minimum security is committed to the sound discretion of the defendants based upon the facts of the individual inmate's case. In general, the defendants have broad discretion, but the detainer policy limits it in a way that further undermines any suggestion that a minimum security transfer could reasonably be expected. If a detainer obtains, an inmate simply is not eligible for a minimum security transfer. Consequently, the language of the regulations does not create the reasonable expectation of a transfer to lower security sufficient to create a liberty interest, *see Olim,* 461 U.S. at 249, 103 S.Ct. at 1747, and denying such a transfer because of an INS detainer would not be an "atypical and significant hardship" sufficient to call for protection by the Due Process Clause. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Because entitlement to a minimum security transfer is not a protected liberty interest, *see Ostrer v. United States Bureau of Prisons,* No. 89–5028, 1989 WL 128033 (D.C.Cir., Sept. 6, 1989), the defendants' detainer policy does not offend the Due Process Clause. *See Coca v. Henry, supra,* 1991 WL 164328 at *1

(no due process violation resulting from denial of prison programs to prisoner against whom detainer is imposed); *Paulino v. Connery,* 766 F.Supp. 209, 210–211 (S.D.N.Y. 1991) ("Although lodging a detainer against plaintiff while he is in custody may have the effect of prohibiting him from participating in a work release program, it does not violate his constitutional rights.")

The defendants' motion for partial summary judgment on this issue will be granted; the plaintiffs' motion for partial summary judgment will be denied.

## Class certification under Fed.R.Civ.P. 23

 The plaintiffs have moved for the certification of a class "of all inmates of Hispanic origin who are now or who will later be incarcerated in D.C. Department of Corrections institutions." Plaintiffs' Motion for Class Certification, at 1. The defendants, who during discovery provided the plaintiffs with a listing of all Hispanic prisoners incarcerated in D.C. institutions, object on the sole ground that "it is not possible for this Court or the parties to know with any certainty which individuals should be included in the class." Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Defendants' Opposition"), at 2. For the reasons stated below, the plaintiffs' motion will be granted.[7] A class of Hispanic prisoners who are now or who will later be incarcerated in D.C. Department of Corrections institutions will be certified. Additionally, as ordered below, the plaintiffs shall propose an order providing the class members with notice and the parties shall brief the issue whether the Court should certify a subclass of Hispanic prisoners who are unable, or have limited

courts no longer engage in a "search for a negative implication in the mandatory language in prisoner regulations." *Id.* at ——, 115 S.Ct. at 2300. Instead, a stricter test applies: protected interests are generally those "limited to freedom of restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (citations omitted). Because it is not clear whether, and if so how, the stricter *Sandin* analysis applies

to the issues presented in this case, *see id.* at ——, 115 S.Ct. at 2306 (Breyer, J., dissenting) ("I am not certain whether or not the Court means this standard to change prior law radically."), this Court has applied the more liberal pre-*Sandin* standards, which favor the plaintiffs.

7. The requested certification for a subclass consisting of all Hispanic inmates who have or will have INS detainers lodged against them is mooted by the Court's decision on the underlying merits of that issue, as discussed *supra.*

abilities, to communicate in the English language.

The Court has broad discretion to determine whether a particular action justifies certification under Rule 23 of the Federal Rules of Civil Procedure. *Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 483 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). The party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all the prerequisites of Rule 23(a) are satisfied, and that the class falls within one of the categories of Rule 23(b). *See* 7A Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1759, at 102 (1986) (citing cases).

First, the plaintiffs have alleged the identification of a class that is sufficiently definite such that it would be administratively feasible to determine whether a particular person is a member of the class. The plaintiffs share a defining characteristic: their Hispanic origin, an immutable characteristic by which the defendants classify certain prisoners. Because the defendants have "produced a computer print-out entitled 'Hispanic Residents by Institution'," Plaintiffs' Reply, at 2, the defendants' statement that it is not administratively feasible to classify Hispanic inmates rings hollow.

Second, the plaintiffs have satisfied the prerequisites of Rule 23(a), which requires that the class be sufficiently numerous such that joinder is impracticable; that questions of law or fact be common to the class; that the claims of the representatives be typical of those of the class; and that the representative parties fairly and adequately represent the members of the class. Judging by their silence, the defendants have apparently conceded, and the record reflects, that these prerequisites have been met.

Whether a class is sufficiently numerous depends upon the circumstances of each case, *see Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981), but the plaintiffs need only show that the number is sufficiently large such that it would be extremely difficult or inconvenient to join all the members of the class. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2nd Cir.1993). Based upon the information produced by the defendants during discovery, the plaintiffs have shown that the class would consist of approximately 200 persons. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Memorandum"), at 3. The plaintiffs are not required to show the exact number, *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983), particularly where, as in the prison context here, the members of the class "are incapable of specific enumeration." *Dean v. Coughlin*, 107 F.R.D. 331, 332 (S.D.N.Y. 1985). Given the nature of the claims asserted and the underlying facts alleged, a proposed class size of 200 prisoners is sufficiently numerous to satisfy the numerosity requirement.

Rule 23(a)(2) requires the existence of questions of fact or law common to the class. However, this rule does not require commonality on each fact or every issue. *See Forbush v. J.C. Penney & Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). This case involves allegations that Hispanic prisoners are discriminated against because of their race. By its very nature, racial discrimination is based upon characteristics that define a class; this, combined with the underlying facts from which the discrimination allegations arise, places a commonality determination easily within the Court's reach. *See Holsey v. Armour Co.*, 743 F.2d 199, 217 (4th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); *see also NAACP v. Georgia*, 99 F.R.D. 16, 25 (S.D.Ga.1983) (when broad discrimination policies and practices constitute the gravamen of a class suit, common questions of law and fact are necessarily presented). Common questions of law and fact also arise, to a varying degree based upon the inmates' English fluency, from the lack of Spanish-language translators.

■ While the claims of each prisoner plaintiff need not be identical to satisfy the commonality requirement, the allegations in this case are sufficiently similar to satisfy the typicality requirement of Rule 23(a)(3). The representatives have been subjected to the same conditions and course of conduct as the members of the class they represent. Although the injuries suffered or threatened by each class member may not be identical with each other or the class representatives, typicality does not require such identity. *See, e.g., Holsey,* 743 F.2d at 217; *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1062 (8th Cir.1975); *Littlewolf v. Hodel,* 681 F.Supp. 929, 935 (D.D.C.1988), *aff'd,* 877 F.2d 1058 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 832 (1990). Fortifying a conclusion that the typicality prong is satisfied, based upon the allegations in the complaint, the Court concludes that both the class representatives and absent class members would proceed on the same or similar legal theories and rely upon the same or similar facts.

■ In satisfying the final element of Rule 23(a), the Court finds that the plaintiffs have demonstrated that the representatives, thirteen Hispanic prisoners in four of the thirteen D.C. correctional institutions, will fairly and adequate represent the other prisoners. While the representatives share common or similar claims, which arise from common or similar facts, none of the representatives is identically situated. Each of the representatives has a varying degree of fluency with the English language and a different medical history and may have other problems that differ. As such, they fairly represent a cross-section of the Hispanic inmate population in the corrections institutions. Moreover, the plaintiffs are represented by experienced counsel who the Court expects will adequately protect the interests of the class.

■ Finally, the plaintiffs have satisfied Rule 23(b)'s requirement to maintain a class action. While the plaintiffs need only satisfy one of the requirements under Rule 23(b), the Court could base its decision on one of several grounds: first, separate actions in this suit against correctional institutions would create a risk of inconsistent adjudications, thus establishing incompatible standards of conduct for personnel at the correctional institutions. If the plaintiffs carry their burden at trial, the relief sought involves equitable relief as to the treatment of Hispanic prisoners in general and, possibly, Hispanic prisoners with limited speaking skills. A haunting specter of inconsistency, resulting in incompatible standards of conduct for prison officials, is raised by the threat of individual suits rather than a class action. This is sufficient to satisfy Rule 23(b)(1)(A). Similarly, final injunctive relief would be dispositive of the claims of each class member, satisfying Rule 23(b)(2), and common questions of both law and fact predominate in this case, making a class action superior to other available means to adjudicate this case, satisfying Rule 23(b)(3).

The Court's only reservation is not whether the class should be certified, but whether a subclass (or subclasses) consisting of Hispanic prisoners with no or limited English fluency should be established. The precise injury suffered and the exact nature of the equitable relief appropriate may vary with the individual Hispanic inmates' degree of English fluency. Although the Court could establish such a subclass *sua sponte, see* 7B Charles Wright, Arthur Miller & Mary Kay Kane, *supra,* § 1790, at 269–70, it is preferable to have the full benefit of the views of the parties.

### III. Conclusion.

Accordingly, it is hereby

ORDERED that the plaintiffs' motion for partial summary judgment is denied; it is

FURTHER ORDERED that the defendants' motion for partial summary judgment is granted on the plaintiffs' causes of action in the Original Complaint as incorporated in the Amended Complaint, ¶¶ 32–44; it is

FURTHER ORDERED that the plaintiffs' motion for class certification is granted. A class is certified of all inmates of Hispanic origin who are now or who will later be incarcerated in D.C. Department of Corrections institutions; it is

FURTHER ORDERED that the plaintiffs' motion for certification of a subclass of Hispanic prisoners against whom detainers are imposed is denied as moot; it is

FURTHER ORDERED that the plaintiffs shall file on or before January 19, 1996, a brief on whether the Court should certify a subclass or subclasses of Hispanic inmates with limited or no fluency in the English language; opposition, if any, shall be filed on or before February 2, 1996; reply, if any, shall be filed on or before February 9, 1996; and it is

FURTHER ORDERED that the plaintiffs shall file on or before January 19, 1996, a proposed notice to the members of the class or subclass; opposition, if any, shall be filed on or before February 2, 1996; reply, if any, shall be filed on or before February 9, 1996.

IT IS SO ORDERED.