Timothy PIGFORD, et al., Plaintiffs,

v.

Dan GLICKMAN, Secretary, United States Department of Agriculture, Defendant.

Civ.A. No. 97–1978 PLF.

United States District Court, District of Columbia.

Oct. 9, 1998.

342

Alexander J. Pires, Jr., Conlon, Frantz, Phelan & Pires, Washington, DC, for plaintiffs.

Susan Hall Lennon/Terry Henry, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on plaintiffs' motion for class certification. Upon consideration of plaintiffs' motion, the opposition filed by the government, plaintiffs' reply and the arguments presented by counsel at oral argument, the Court concludes that the class action vehicle is the most appropriate mechanism for resolving the issue of liability in this case. The Court therefore will certify a class for the purpose of determining liability.

## I.  BACKGROUND

Plaintiffs, four hundred and one African American farmers from Alabama, Arkansas, California, Florida, Georgia, Illinois, Kansas,

Missouri, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas and Virginia, allege (1) that the United States Department of Agriculture ("USDA") willfully discriminated against them when they applied for various farm programs, and (2) that when they filed complaints of discrimination with the USDA, the USDA failed properly to investigate those complaints. Fifth Amended Complaint at 53.[1]

Plaintiffs challenge the USDA's administration of several different farm loan and subsidy programs and/or agencies. Until 1994, the USDA operated two separate programs that provided, *inter alia*, price support loans, disaster payments, "farm ownership" loans and operating loans: the Agricultural Stabilization and Conservation Service (" ASCS") and the Farmers Home Administration ("FmHA"). In 1994, the functions of the ASCS and the FmHA were consolidated into one newly-created entity, the Farm Service Agency ("FSA").

A farmer seeking a loan or subsidy from the FSA must submit an application to a county committee, comprised of producers from that county who are elected by other producers in that county. If the county committee approves the application, the farmer receives the subsidy or loan. If the application is denied, the farmer may appeal to a state committee and then to a federal review board. Under the ASCS and the FmHa, the procedure for applying for a loan or subsidy essentially was the same as the current FSA procedure, with several slight variations. If a farmer applied for an ASCS benefit, a County Executive Director was supposed to work with that farmer to help him complete his application, and the County Executive Director also was supposed to do an initial review of the application. If a farmer applied for a loan from FmHA, the review

mechanisms available if the loan was denied differed slightly.

Under the FSA and previously under the ASCS and the FmHA, a farmer who believes that his application was denied on the basis of his race or for other discriminatory reasons has the option of filing a civil rights complaint either with the Secretary of the USDA or with the Office of Civil Rights Enforcement and Adjudication ("OCREA"). In the case of a farmer whose FmHA application was denied, the farmer also had the option of filing a complaint with the FmHA Equal Opportunity Office. A program discrimination complaint filed with USDA is supposed to be forwarded to OCREA, and after reviewing the complaint, OCREA is supposed to return it to the FSA for conciliation and/or preliminary investigation. The FSA then is required to forward the complaint to the Civil Rights and Small Business Utilization Staff ("CR & SBUS"), the division of FSA responsible for investigating complaints alleging discrimination within FSA's programs. CR & SBUS is required to forward the complaint to the State Civil Rights Coordinator who is supposed to attempt to conciliate the complaint and/or conduct a preliminary investigation and then report back to CR & SBUS. Ultimately, any conciliation agreement or investigatory findings are to be reported to OCREA for a final determination.

Plaintiffs allege a complete failure by the USDA to process discrimination complaints. Plaintiffs allege that in 1983, OCREA essentially was dismantled and that complaints that were filed were never processed, investigated or forwarded to the appropriate agencies for conciliation. As a result, farmers who filed complaints of discrimination never received a response, or if they did receive a response, it was a cursory denial of relief. In some cases, plaintiffs allege that OCREA

---

1. Between the time the original complaint was filed and the time of oral argument on the motion for class certification, plaintiffs filed five separate motions for leave to file amended complaints. On May 22, 1998, the government indicated that it did not oppose the five motions for leave to amend, and on June 3, 1998, the Court granted plaintiffs' five motions for leave to file amended complaints. While the filing of the amended complaints had not been authorized at

the time of argument on the motion for class certification, the issue since has been resolved and the Court therefore will treat the Fifth Amended Complaint as the relevant complaint for purposes of this Opinion.

On October 2, 1998, plaintiffs filed a motion for leave to file a Sixth Amended Complaint. Plaintiffs have stated that the government does not oppose the motion.

344

simply threw discrimination complaints in the trash without ever responding to or investigating them.

In response to the numerous complaints of minority farmers, Secretary of Agriculture Dan Glickman appointed a Civil Rights Action Team ("CRAT") to "take a hard look at the issues and make strong recommendations for change." *See* Pls' Motion for Class Certification, Exh. B (Report of the Civil Rights Action Team) at 3. In February of 1997, the CRAT issued a report which concluded that "[m]inority farmers have lost significant amounts of land and potential farm income as a result of discrimination by FSA programs and the programs of its predecessor agencies, ASCS and FmHA.... The process for resolving complaints has failed. Minority and limited-resource customers believe USDA has not acted in good faith on the complaints. Appeals are too often delayed and for too long. Favorable decisions are too often reversed." *Id.* at 30–31.

Also in February of 1997, the Office of the Inspector General of the USDA issued a report to the Secretary of the USDA indicating that the USDA had a backlog of complaints of discrimination that had not been processed, investigated or resolved. *See* Pls' Motion for Class Certification, Exh. A (Evaluation Report for the Secretary on Civil Rights Issues). The Report found that immediate action was needed to clear the backlog of complaints, that the "program discrimination complaint process at [the Farm Services Agency] lacks integrity, direction, and accountability," *id.* at 6, and that "[s]taffing problems, obsolete procedures, and little direction from management have resulted in a climate of disorder within the civil rights staff at FSA." *Id.* at 1.

The CRAT Report and the Report of the Inspector General clearly contributed to plaintiffs' decision to file this class action. Even before the reports were issued, however, minority farmers had alleged that the USDA discriminated on the basis of race in the administration of its farm programs. In

late 1995, five farmers filed a lawsuit in this Court captioned *Williams v. Glickman,* Civil Action No. 95–1149 (now captioned *Herrera v. Glickman* ). *Williams,* originally was filed as a class action alleging that the USDA discriminated against minority farmers in the operation of its farm programs. The proposed *Williams* class was defined as

> All African American or Hispanic American persons who, between 1981 and the present, have suffered from racial or national origin discrimination in the application for or the servicing of loans or credit from the FmHA (now Farm Services Agency) of the USDA, which has caused them to sustain economic loss and/or mental anguish/emotion [sic] distress damages.

*See Williams v. Glickman,* Civil Action No. 95–1149, 1997 WL 74547, Memorandum Opinion of February 14, 1997 at 7. On February 14, 1997, Judge Thomas A. Flannery denied plaintiffs' motion for class certification. Judge Flannery essentially found that plaintiffs' proposed class definition was too amorphous and overly broad and that the claims of the named plaintiffs were not typical or representative of the claims of potential class members. Judge Flannery also found that even if plaintiffs could meet the requirements of. Rule 23(a) of the Federal Rules of Civil Procedure governing class actions, plaintiffs had failed to establish any of the Rule 23(b) requirements. On April 15, 1997, Judge Flannery denied plaintiffs' motion for reconsideration.[2]

## II. DISCUSSION

■ As a preliminary matter, the Court will address the government's contention that the issue of class certification presented here has already been decided by Judge Flannery in *Williams.* While there are some facial similarities between plaintiffs' complaint in this case and the complaint in *Williams,* there also are significant differences. Most fundamentally, the gravaman of plaintiffs' complaint in this case is not just that they were subjected to discrimination when they applied for loans and subsidies but that when

---

**2.** Most of the original *Williams* plaintiffs settled their claims against the USDA. The two remaining plaintiffs, both of whom are Hispanic, had pending administrative complaints with the USDA, and the court therefore stayed the lawsuit pending an administrative determination by the USDA on the merits of the administrative complaints.

they filed complaints with the USDA regarding the alleged discrimination, the USDA failed properly to process and investigate those complaints. By contrast, the basis of plaintiffs' complaint in *Williams* was "the existence of a 'common thread of discrimination in the granting and servicing of loans by FmHA, which is a basic issue that affects all or a significant number of the putative class members.' ... as well as the fact that they have all suffered the same 'injury'—that is, denial of credit and loan servicing." *See Williams v. Glickman,* Civil Action No. 95–1149, Memorandum Opinion of February 14, 1997 at 12. In *Williams,* Judge Flannery found that the class was insufficiently defined and that there was no commonality of claims because plaintiffs were "asking the Court to certify a class which would encompass every possible instance of discrimination in connection with the FmHA's making and servicing of loans." *Id.* at 15. By contrast, the legal and factual issues presented by plaintiffs in this case relate, in the first instance, to the USDA's processing of written complaints of discrimination (or lack thereof), and the class certification questions therefore differ significantly from those addressed in *Williams.*

In order to establish that they are entitled to certification of a class, plaintiffs bear the burden of showing that a class exists, that all four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure have been met and that the class falls within at least one of the three categories of Rule 23(b) of the Federal Rules of Civil Procedure. *See, e.g., Hartman v. Duffey,* 19 F.3d 1459, 1468 (D.C.Cir.1994); *Franklin v. Barry,* 909 F.Supp. 21, 30 (D.D.C.1995). The four prerequisites of Rule 23(a) require plaintiffs to demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a), Fed.R.Civ.P. Plaintiffs claim that they meet all of the prerequisites of Rule 23(a) and that a class can be certified pursuant to all three subdivisions of Rule 23(b) of

the Federal Rules, but they rely primarily on Rule 23(b)(2) and (b)(3).

Plaintiffs have proposed a number of class definitions with varying degrees of specificity. The original complaint and the four amended complaints that followed define the class rather generally. The parties appear to have briefed the class certification issue on the basis of the Fourth Amended Complaint, but plaintiffs' motion for class certification uses a slightly different definition from the one contained in the Fourth Amended Complaint. Subsequently, plaintiffs sought and were granted leave to file a Fifth Amended Complaint, which contains a third definition of the class. Finally, after oral argument on the issue of class certification, plaintiffs filed a revised proposed order which has yet another definition of the class. The final proposed class definition is the most specific and responds to many of the concerns raised by the government. The Court therefore will use that definition as the basis for its analysis. The revised proposed order defines the class as follows:

> All African–American farmers who (1) farmed between January 1, 1983, and February 21, 1997; and (2) applied, during that time period, for participation in a federal farm program with USDA, and as a direct result of a determination by USDA in response to said application, believed that they were discriminated against on the basis of race, and subsequently filed a written discrimination complaint with USDA.

Plaintiffs also have proposed three subclasses pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure: (1) "African–American farmers, who have a file with Defendant, but did not receive a written determination from Defendant in response to their discrimination complaint;" (2) "African–American farmers, who have a file with Defendant, who received a written determination from Defendant in response to their discrimination complaint but said Defendant was not in accordance with the law;" and (3) "African–American farmers, who do not have a file with Defendant because their discrimination complaints were destroyed, lost or

thrown away by Defendant."[3] Each subclass must independently meet the standards of Rule 23 class certification. *Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C.Cir.1997).

## A. Existence of Class

██ Although Rule 23 of the Federal Rules of Civil Procedure does not specifically require plaintiffs to establish that a class exists, this is a common-sense requirement and courts routinely require it. *See, e.g., Franklin v. Barry,* 909 F.Supp. at 30; *Lewis v. Nat'l Football League,* 146 F.R.D. 5, 8 (D.D.C.1992). The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. *See Hartman v. Duffey,* 19 F.3d at 1471. It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that "the general outlines of the membership of the class are determinable at the outset of the litigation." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1760 at 118. In other words, the class must be sufficiently definite "that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 121. The government contends that plaintiffs have failed to meet this basic requirement because, as in *Williams,* the definition of the class are so amorphous that it is impossible to determine who is or is not a member of the class.

██ The Court concludes that the parameters of the proposed class as defined by plaintiffs in this case are sufficiently clear to make the proposed class administratively manageable; by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class. The class is limited in three ways. First, the class is limited to African–American farmers who were farming at some point during the time period between January 1, 1983 and February 21, 1997. Second, the class is limited to farmers who applied during that same time period for participation in federal farm programs with the USDA. Finally, the class is limited to farmers who filed written discrimination complaints with the USDA as a result of the USDA's response to their applications for participation in the farm programs. While plaintiffs' proposed class definition does not specify the time frame within which a farmer must have filed a written complaint with the USDA, plaintiffs made clear at oral argument that in order to be a member of the class, a farmer must have filed a written complaint of discrimination with the USDA in the time period between January 1, 1983 and February 21, 1997. The Court therefore will incorporate that time limitation into the proposed class definition.

██ The Court also finds that the proposed subclasses are sufficiently well-defined to make the subclasses administratively feasible and that the creation of subclasses will facilitate more focused discovery, a more orderly trial, and potentially a more refined approach to mediation and settlement. *See Marisol A. v. Giuliani,* 126 F.3d 372, 378 (2d Cir.1997). Subclass 1 includes any member of the class who has a file with the USDA, but who never received a written response to his or her complaint of discrimination. The parameters of this subclass are clear, and it does not appear that there will be any difficulty identifying members of this subclass.

Subclass 2 includes any member of the class who has a file with the USDA, who received a written determination in response to his or her complaint of discrimination, but who claims that the determination by the USDA was not in accordance with law.[4] The

---

3. The "file" referred to in the subclass definitions apparently is a file that is maintained by the USDA when a farmer submits an administrative discrimination complaint. The file presumably includes the complaint, the investigation and any resolution of the complaint.

4. Plaintiffs' proposed definition for Subclass 2 defines it as all African American farmers who have a file with the USDA and "who received a written determination from Defendant in response to their discrimination complaint but said *Defendant* was not in accordance with the law." *See* Revised Proposed Order (emphasis added). It would appear to be more manageable to define the subclass in terms of whether the *determination* issued by the USDA was in accordance with law rather than whether the USDA was in accordance with the law, and the Court therefore will use that as the definition.

government contends that trying to determine whether a farmer is a member of this subclass will require an individualized determination with respect to the merits of the individual's claim that his or her complaint of discrimination was not adequately processed or investigated and thus undermines the utility of the class action vehicle. *See Hagen v. City of Winnemucca,* 108 F.R.D. 61, 63 (D.Nev.1985) (proposed class definition of " '[a]ll persons whose constitutional rights have been ... are or may be violated by [city's unwritten prostitution policy]' ... is insufficient, in that it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member"); *Williams v. Glickman,* Civil Action No. 95–1149, Memorandum Opinion of Feb. 14, 1997 at 8–9.

While Subclass 2 as defined by plaintiffs may require individualized determinations, a slight modification to the definition of the subclass will correct the problem. The subclass is framed primarily by two objective criteria and one subjective criterion. The two objective criteria are: (1) membership in the class, and (2) a determination from USDA with respect to the written complaint of discrimination. The third criterion for membership in the subclass is that the determination issued by the USDA "was not in accordance with the law." The problem with this criterion, as the government suggests, is that it either requires the Court to make an individualized finding with respect to whether each determination issued by the USDA was in accordance with law before the individual can be considered a member of the subclass or it requires the Court to assume that the USDA is liable and did not act in accordance with law when it made any determination with respect to a written complaint of discrimination. The problem is avoided simply by modifying the third criterion for membership in Subclass 2 to include those "who maintain that the written determination from Defendant was not reached in accordance with law." Redefining the third criterion in this way removes any need for the Court either to make an individualized merits inquiry or to assume the liability of the USDA in order to determine whether a person belongs to the subclass.

Subclass 3 is comprised of any member of the class who does not have a file with the USDA because his or her complaint never was processed. Of all of the proposed subclasses, the members of this subclass probably will be most difficult to identify, since the USDA has not maintained a file on them. Nonetheless, this subclass is sufficiently well-defined to identify its members at least for the liability stage of the litigation. Membership in the subclass is limited to persons who are members of the class, and to be a class member a farmer must establish that he or she filed a written complaint of discrimination with the USDA between January 1, 1983 and February 21, 1997. Although as a practical matter persons without a file may have a more difficult time establishing their membership in the class than will the members of the other two subclasses for whom there is a paper trail within the USDA, the Court nevertheless finds that the parameters of the subclass, as limited by membership in the class, are sufficiently well-defined.

### B. Rule 23(a) Prerequisites

#### 1. Numerosity

■ The class and all three subclasses are so numerous that joinder of all members is impracticable. *See* Rule 23(a)(1), Fed. R.Civ.P. Plaintiffs estimate that there are approximately 2500 members of the class. The government disputes this number and contends that plaintiffs are only speculating about the exact number of class members. Govt's Opp. at 21. Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number of putative class members in order to satisfy the numerosity requirement. *See e.g., Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *Franklin v. Barry,* 909 F.Supp. at 29. This is especially true where plaintiffs allege that it is the USDA's actions of destroying complaints that has led to plaintiffs' inability to provide a more precise number. The Court therefore concludes that the numbers provided by plaintiffs sufficiently establish numerosity.

Plaintiffs have provided the names of four hundred and one named plaintiffs who they claim fall within the class definition. That alone is sufficient to establish numerosity, especially where the class members are located in different states. *See, e.g., Markham v. White,* 171 F.R.D. 217, 221 (N.D.Ill.1997) (class of 35 to 40 plaintiffs sufficient to satisfy numerosity where class members resided in different states). In addition, for all of the named plaintiffs, it is not mere conjecture to assume that there are more people who have not yet been identified who will emerge. The sheer number of amended complaints filed in this case is a result of the fact that more plaintiffs keep coming forward. It simply is not manageable to require plaintiffs to keep filing amended complaints to add the names of more plaintiffs.

Since plaintiffs have sufficiently established numerosity with respect to the class as a whole, the subclasses also are sufficiently numerous. The only subclass about which there is any serious question with respect to the numerosity requirement is Subclass 2, and plaintiffs appear to acknowledge that there are fewer members of this subclass than the other two subclasses. *See* Transcript at 38, 40 ("the Government gave them a decision which there's a few of them"). While there may not be as many members of Subclass 2 as there are members of the other subclasses, there appear to be a sufficient number of members of this subclass and the issues presented by this subclass are sufficiently distinct to warrant making this a separate subclass.

## 2. Commonality

Plaintiffs also have established that there are questions of law and fact with respect to liability that are common to the class. *See* Rule 23(a)(2), Fed.R.Civ.P. Plaintiffs allege that the USDA failed properly to process each class member's complaint of discrimination. For purposes of determining liability, the same factual and legal issues arise: (1) Did the USDA have a legal obligation to process and investigate complaints of discrimination that it received? (2) If the USDA had such a duty, was there a systemic failure properly to process complaints in the specified time period? (3) If there was such a systemic failure, do plaintiffs have a private cause of action against the USDA? (4) Does the government have a legitimate statute of limitations defense to the claims asserted by plaintiffs? These shared issues are more than sufficient to meet the commonality prerequisite. *See Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997) ("The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members"), *cert. denied,* —— U.S. ——, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998).

The government contends that the factual and legal issues presented by each putative class member are distinct on two levels. First, the government contends that while some of the putative class members allege that they received no response from the USDA after they filed their discrimination complaints, other putative class members received findings of no discrimination from the USDA and still others received findings of discrimination. The government contends that the basis of the claims of each of these groups is distinct, and they therefore argue that the class action mechanism is inappropriate. The claims of these three different groups do present slightly different issues, but the class action rule does not require commonality on every fact or every issue, *Franklin v. Barry,* 909 F.Supp. at 30, and the Court finds that there is sufficient similarity in the claims presented by class members that the differences that do exist are best addressed through the subclass mechanism rather than by abandoning the class mechanism altogether.

The government also argues that the "underlying question here is whether or not discrimination occurred in the credit and crop subsidy transactions that each class member is alleged to have participated in . . . [Putative class members] seek redress for the discrimination that occurred in any form or any variety of forms in the transactions that the class members participated in with their local offices." Transcript at 20–21. For instance, one class member may have filed a discrimination complaint with the USDA after the County Commission in Yazoo County, Mississippi delayed his FSA

emergency disaster loan, while another class member may have filed a discrimination complaint with the USDA with respect to the denial of an emergency disaster payment in Greene County, Alabama, and a third class member may have filed a discrimination complaint with the USDA after he received a lower crop subsidy through the ASCS program than he thought he was entitled to receive. The government argues that because plaintiffs have failed to identify a particular practice or policy of discrimination in the USDA that is common to all class members, there is no commonality to their claims.

The government overlooks the central fact that the unifying pattern of discrimination at issue in this case is the USDA's failure properly to process complaints of discrimination, without regard to the program that triggered the discrimination complaint. Plaintiffs' primary complaint is a pattern of "systemic racial discrimination by the USDA based upon their fraudulent act in 1983—the disbanding of the USDA civil rights enforcement office—and the fourteen years following that fraudulent act ... Defendant's wrongful act in 1983 and continuing wrong from 1983 to 1997 created, for each Plaintiff, the circumstances that lead to each. Plaintiff's claim." Plaintiffs' Reply at 6, 8. The *damage* caused by the USDA's alleged failure to properly process the discrimination complaints may vary according to whether a class member actually was subjected to discrimination in the process of applying for a USDA program and according to the program about which he or she complained. But for purposes of liability, class members uniformly present the issue of whether the USDA, for all intents and purposes, disbanded its civil rights office in 1983 and failed, in the fourteen years that followed, properly to process written complaints of discrimination or to process them at all.[5]

The claims of the members of Subclasses 1 and 3 present common issues of law and fact.

The members of Subclass 2 present slightly different issues depending on whether the USDA denied them relief or granted them relief that they maintain was insufficient, but all of the members of that subclass share a common issue in addition to those shared by all class members: whether the fact that the USDA responded to their complaints precludes relief. The Court therefore finds that each subclass presents common issues of law and fact.

### 3. Typicality

■ Plaintiffs also have established that the claims of the class representatives are typical of those of the class. *See* Rule 23(a)(3), Fed.R.Civ.P. The typicality prerequisite is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir.1994). It is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability. *Id.* at 58; *Marisol A. v. Giuliani*, 126 F.3d at 376; *Johns v. Rozet*, 141 F.R.D. 211, 216 (D.D.C.1992). Plaintiffs' Fifth Amended Complaint contains four hundred and one named plaintiffs. As discussed *supra* at 348–349, the claims of all class members arise from the USDA's alleged dismantling of its civil rights office and its subsequent failure to process discrimination complaints, the same event, practice and course of conduct that give rise to the claims of the four hundred and one representative plaintiffs.

The government contends that the claims of only three of the named plaintiffs are described in detail in the complaint and that the claims of Mr. Pigford in particular are not typical or representative of the claims of

---

5. The government contends that an allegation that class-wide racial discrimination has occurred is insufficient by itself to establish the right to proceed as a class action. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Plaintiffs have alleged not just class-wide racial discrimi-

nation, but that the USDA for a period of fourteen years systematically failed to properly process written complaints of discrimination filed by African American farmers. It is the allegation of that discriminatory practice that defines this class and that entitles plaintiffs to class certification.

other putative class members because he previously has filed his claims in this Court, and his claims therefore may be barred on *res judicata* grounds. Since this is the second complaint filed by Mr. Pigford, the government indeed may be able to assert defenses to his claims that it could not assert against other members of the class. Moreover, upon review of the Fifth Amended Complaint, it appears that plaintiffs have not provided a detailed description of the claims of a representative of each subclass as defined in this Opinion. Because the Fifth Amended Complaint includes four hundred and one named plaintiffs who cover the spectrum of claims and interests that may be presented by the class, however, it is not too much to assume that this deficiency can be easily remedied. In order to provide greater precision and clarity as the legal and factual issues presented by each subclass are briefed and eventually tried or settled, plaintiffs shall file an amended complaint detailing the claims of at least four typical representatives of each subclass.

### 4. Adequacy of Representation

■ The final element of Rule 23(a) necessitates an inquiry into the adequacy of representation, including the quality of class counsel, any disparity of interest between class representatives and members of the class, communication between class counsel and the class and the overall context of the litigation. *Twelve John Does v. District of Columbia*, 117 F.3d at 575. The Court finds that class counsel and the representative class members adequately will represent the interests of the class.

First, Mr. Alexander Pires and Mr. Phillip Fraas as lead counsel and Mr. J.L. Chestnut, Mr. Othello Cross, Mr. T. Roe Frazer, Mr. Hubbard T. Saunders, IV, Mr. Gerald Lear and Mr. James Myart, Jr., all serving as of counsel, have demonstrated that they will advocate vigorously for the interests of the class. Class counsel represent a breadth of geographic coverage: they are associated with firms from Washington D.C.; Jackson, Mississippi; Selma, Alabama; Pine Bluff, Arkansas; and Arlington, Virginia. Moreover, there has been no suggestion that class counsel has not communicated with members of the class nor, given the large number of plaintiffs who have attended each hearing, could there be any such suggestion.

Second, the Court finds that there is no disparity of interest between the representative parties and members of the class as a whole. The fact that there are over four hundred named plaintiffs representing a breadth of situations and interests provides assurance that the interests of all class members are fairly represented. To the extent that the lack of detail in the complaint with respect to particular named plaintiffs' factual situations presents a concern, that concern will be allayed when plaintiffs file a further amended complaint detailing the facts of four representatives of each subclass. *See supra* at 350.

Finally, the overall context of this litigation demonstrates the extent to which counsel in this case and the represented parties have worked together. At the time the original complaint was filed, only Mr. Pires and Mr. Fraas were involved. Shortly thereafter, a number of attorneys from other states moved to intervene on behalf of their clients. All of the motions to intervene now have been withdrawn, and the lawyers who filed the motions now are of counsel, working closely and in tandem with lead counsel. All (or most) have attended each hearing and, as appropriate, have participated actively. With the addition of these lawyers, it is clear that class counsel represent the spectrum of interests of the various class members.

### C. Rule 23(b) Prerequisites

■ While plaintiffs believe they satisfy each of the subparts of Rule 23(b) of the Federal Rules of Civil Procedure, the Court concludes that the class is most appropriately certified pursuant to Rule 23(b)(2). *See* Rule 23(b)(2), Fed.R.Civ.P. ("the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"). Civil rights actions frequently are certified under Rule 23(b)(2), and in fact the provision was added specifically to ensure that there was a mechanism for certifying classes in civil

rights cases. *See* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1776 at 495; *Eubanks v. Billington,* 110 F.3d 87, 92 (D.C.Cir.1997).

The government contends that plaintiffs primarily are seeking monetary rather than equitable relief and that the class therefore cannot properly be certified pursuant to Rule 23(b)(2). Plaintiffs certainly are seeking money damages. The mere fact that plaintiffs are seeking monetary relief in addition to injunctive and declaratory relief, however, does not preclude class certification pursuant to Rule 23(b)(2), "at least where the monetary relief does not predominate." *Eubanks v. Billington,* 110 F.3d at 92. Plaintiffs seek a variety of injunctive and declaratory remedies: they seek, *inter alia,* a declaratory judgment defining "the rights of plaintiffs and class members under defendant's farm programs including their right to equal credit, participation in farm programs, and their right to full and timely enforcement of racial discrimination complaints," and an injunction reversing as arbitrary, capricious, an abuse of discretion and contrary to law defendant's acts of denying class members credit and other benefits. *See* Fifth Amended Complaint at 90–94. While plaintiffs also seek monetary relief for the alleged acts of discrimination, the requested injunctive and declaratory relief, if granted, would have a significant impact on how the USDA processes its complaints and how it handles discrimination complaints currently proceeding through the administrative mechanism.

In addition, it is appropriate to certify this class pursuant to Rule 23(b)(2) because it is being certified only for purposes of determining liability. If liability is found and the case reaches the remedy stage, the Court will have to determine the most appropriate mechanism for determining remedy. It is possible that at that point it would be appropriate to certify a class pursuant to Rule 23(b)(3) (common questions of law or fact predominate over questions affecting individual members and class action is superior method for adjudication of controversy). *See Eubanks v. Billington,* 110 F.3d at 96 (in class action seeking both injunctive and monetary relief, court may adopt a "hybrid" approach and certify (b)(2) class as to claims for injunctive or declaratory relief and certify (b)(3) class at monetary relief stage). For the purposes of determining liability, however, the Court will certify a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

### D. Notice and Opt–Out Provisions

While Rule 23 does not specifically provide for notice and opt-out rights when a class is certified pursuant to Rule 23(b)(2), the Court in its discretion may require plaintiffs to provide notice to all class members and may provide an opportunity for class members to opt out of the class. *See* Rule 23(d)(5), Fed. R.Civ.P.; *Thomas v. Albright,* 139 F.3d 227, 234–35 (D.C.Cir.1998), *petition for cert. filed,* 67 U.S.L.W. 3156 (U.S. Aug. 24, 1998) (No. 98–326); *Eubanks v. Billington,* 110 F.3d at 96.

Plaintiffs in their proposed order suggest that the Court order that notice be "given to all class members to inform them of the following: i) the conditions to be met for inclusion into the class; ii) the conditions resulting in the exclusion of certain individuals from the class; iii) the alternatives to joining the class; iv) the date, time and place of hearings to be held with regard to this matter; and v) the benefits and consequences derived from joining the class." Proposed Order at 3. Since the USDA has an administrative system to process complaints of discrimination that some class members may want to use, some form of notice and opt-outs provisions may be appropriate in this case. The parties therefore shall jointly submit a draft notice.

An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, the Court finds that plaintiffs have established that they meet the prerequisites for class certification of Rule 23(a) of the Federal Rules of Civil Procedure and that plaintiffs have established that the

**352**

class properly is certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Accordingly, it is hereby

ORDERED that plaintiffs' motion for class certification is GRANTED; it is

FURTHER ORDERED that a class is CERTIFIED for purposes of determining liability; it is

FURTHER ORDERED that the class is defined as follows:

> All African–American farmers who (1) farmed between January 1, 1983, and February 21, 1997; and (2) applied, during that time period, for participation in a federal farm program with USDA, and as a direct result of a determination by USDA in response to said application, believed that they were discriminated against on the basis of race, and filed a written discrimination complaint with USDA in that time period.

it is

FURTHER ORDERED that the above class is divided into three subclasses, defined as follows:

> Subclass I: African–American farmers, who have a file with Defendant, but did not receive a written determination from Defendant in response to their discrimination complaint;

> Subclass II: African–American farmers, who have a file with Defendant, who received a written determination from Defendant in response to their discrimination complaint but who maintain that the written determination from Defendant was not reached in accordance with law; and

> Subclass III: African–American farmers, who do not have a file with Defendant because their discrimination complaints were destroyed, lost or thrown away by Defendant.

it is

FURTHER ORDERED that by October 23, 1998, plaintiffs shall file a further amended complaint detailing the claims of four

typical representatives of each subclass; and it is

FURTHER ORDERED that the parties shall jointly file a draft notice to class members by October 30, 1998.

SO ORDERED.

